UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JEFFREY GIPE,                                          )
                                                      )
                          Plaintiff,                  )
                                                      )
          -against-                                   )
                                                      )
THE CITY OF NEW YORK; POLICE OFFICER                  )
MATTHEW ROSATO, Shield No. 10761;                     )
JOHN DOES; RICHARD ROES; BROOKLYN                     )
BOWL, LLC; CHARLEY RYAN, co-owner of the              )
Brooklyn Bowl; PETE SHAPIRO, co-owner of the          )
Brooklyn Bowl; ANDREES ALI, Manager of the            )
Brooklyn Bowl; RASHAUM MCDANIEL,                      )
Brooklyn Bowl Security Guard; and MICHAEL             )
MOES,                                                 )
                                                      )
                          Defendants.                 )
-----------------------------------------------------------X

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**13 Civ. 1569 (GBD)**

RECEIVED
AUG 0 6 2013
U.S.D.C. S.D. N.Y.
CASHIERS

## PRELIMINARY STATEMENT

1.   This is a civil action in which the plaintiff, JEFFREY
GIPE, seeks relief for the defendants' violation of his rights
secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and
1983, by the United States Constitution, including its First,
Fourth and Fourteenth Amendments, and by the laws and
Constitution of the State and City of New York.  The plaintiff
seeks damages, both compensatory and punitive, affirmative and
equitable relief, an award of costs and attorneys' fees, and
such other and further relief as this court deems equitable and
just.

1

## JURISDICTION

2.    This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §§ 1981 and 1983. Jurisdiction is conferred upon this court by 42 U.S.C. §§ 1981 and 1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3.    The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.    Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARTIES

6.    Plaintiff was at all times relevant herein a resident of the State of New York, County of Kings.

7.    Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

8.   Defendants Police Officer MATTHEW ROSATO and JOHN DOES
are and were at all times relevant herein duly appointed and
acting officers, servants, employees and agents of THE CITY OF
NEW YORK and/or the New York City Police Department (NYPD), a
municipal agency of defendant THE CITY OF NEW YORK.  Defendants
Police Officer MATTHEW ROSATO and JOHN DOES are and were at all
times relevant herein acting under color of state law in the
course and scope of their duties and functions as officers,
agents, servants, and employees of defendant THE CITY OF NEW
YORK, were acting for, and on behalf of, and with the power and
authority vested in them by THE CITY OF NEW YORK and the New
York City Police Department, and were otherwise performing and
engaging in conduct incidental to the performance of their
lawful functions in the course of their duties.  Defendants
Police Officer MATTHEW ROSATO and JOHN DOES are sued
individually.

9.   Defendants RICHARD ROES are and were at all times
relevant herein duly appointed and acting supervisory officers,
servants, employees and agents of THE CITY OF NEW YORK and/or
the New York City Police Department, responsible for the
training, retention, supervision, discipline and control of
subordinate members of the police department under their
command.  Defendants RICHARD ROES are and were at all times

4

relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.   Defendants RICHARD ROES are sued individually.

10.   At all times herein mentioned, defendant BROOKLYN BOWL, LLC (hereafter "BROOKLYN BOWL") was and is a business establishment located at 61 Wythe Avenue, Brooklyn, NY 11211, and operating under the laws of the State of New York.   It is designated as a domestic limited liability company by the NY State Department of State.

11. At all times herein mentioned, defendants CHARLEY RYAN and PETE SHAPIRO were and are the co-owners of defendant BROOKLYN BOWL.

12. At all times herein mentioned, defendants ANDREES ALI, RASHAUM MCDANIEL, and MICHAEL MOES were and are employees of defendant BROOKLYN BOWL, and were acting within the course and scope of their employment with defendant BROOKLYN BOWL.

13. At all times herein mentioned, defendants RYAN, SHAPIRO, ALI, RASHAUM MCDANIEL, and MOES were acting under color of state

law.

14.   At all times herein mentioned, defendants RYAN, SHAPIRO, ALI, RASHAUM MCDANIEL, and MOES, through their ongoing relationship, joint action, and conspiracy with, members of the New York City Police Department, were clothed with, and acted with impunity because they were clothed with and protected by, the authority of state law.

15.   Defendants RYAN, SHAPIRO, ALI, RASHAUM MCDANIEL, and MOES are sued individually.

16.   At all times herein mentioned, defendants BROOKLYN BOWL, RYAN, and SHAPIRO, their agents, servants and/or employees, including defendants ALI, RASHAUM MCDANIEL, and MOES, were under an obligation to operate, manage, maintain, and control the premises, and their own and their subordinates' activities and behavior, in a careful, safe, and lawful manner.

17.   At all times herein mentioned, defendants BROOKLYN BOWL, RYAN, and SHAPIRO were under an obligation to use reasonable care in the hiring, training, retention, and supervision of their employees.

18.   At all times herein mentioned, defendant CITY was under an obligation to use reasonable care in the hiring, training, retention, and supervision of its employees.

6

## STATEMENT OF FACTS

19.   At approximately midnight on the night of March 10-11, 2012, Plaintiff, his girlfriend, and some friends attended a concert by a group called "Soul Live" at the BROOKLYN BOWL in Brooklyn, NY.

20.   Defendant RASHAUM MCDANIEL, a Brooklyn Bowl Security Guard, falsely accused Plaintiff of having smoked marijuana inside the BROOKLYN BOWL, and physically ejected Plaintiff from the club against his will.

21.   Plaintiff had not smoked any marijuana, was not under the influence of any narcotic, and was not intoxicated from alcohol.

22.   Plaintiff, having paid for his ticket, shortly thereafter went back inside the club to watch the concert.

23.   RASHAUM MCDANIEL again grabbed Plaintiff, and unlawfully searched Plaintiff's pockets without Plaintiff's consent.

24.   RASHAUM MCDANIEL found no contraband of any kind on Plaintiff.

25.   RASHAUM MCDANIEL then again physically ejected Plaintiff from the BROOKLYN BOWL, this time with even greater force.

26.   When they were outside of the club, RASHAUM MCDANIEL slammed Plaintiff twice down to the pavement with great force, smashing Plaintiff's head into the pavement, without cause or

7

justification.

27.  RASHAUM MCDANIEL is a very large, strong, muscular African-American man.

28.  Plaintiff is a slight-framed Caucasian man, weighing approximately 130 pounds.

29.  Plaintiff never showed any physical aggression toward RASHAUM MCDANIEL.

30.  Immediately prior to RASHAUM MCDANIEL slamming Plaintiff to the ground, Plaintiff had commented, in sum and substance, "I can't believe that 'the Coup' would play here," i.e., that Plaintiff could not believe that the band "the Coup" (which was advertised to play at the BROOKLYN BOWL sometime in the relatively near future, and which was a band standing for peaceful and progressive principles to Plaintiff) would be playing at a venue that employed such heavy-handed, overbearing, and thuggish personnel and practices.

31.  RASHAUM MCDANIEL ostensibly misunderstood (either actually misunderstood, or feigned misunderstanding) what Plaintiff had said, and said, in sum and substance, "oh, that's some racist stuff" before slamming Plaintiff on the ground.

32.  RASHAUM MCDANIEL acted with a racial animus toward Plaintiff, and discriminated against Plaintiff on the basis of his race.

33.  RASHAUM MCDANIEL, in addition to slamming Plaintiff twice to the ground, otherwise struck and attacked Plaintiff.

34.   Members of the crowd eventually got RASHAUM MCDANIEL off of Plaintiff, and away from Plaintiff.

35.   Defendant ANDREES ALI, the Manager of the BROOKLYN BOWL, came over to Plaintiff and briefly attempted to placate him.

36.   Defendant ALI told Plaintiff that he would preserve the security video(s) from the BROOKLYN BOWL's security cameras, and that if Plaintiff wanted the footage, he would be happy to provide it to Plaintiff.

37.   Defendant ALI told Plaintiff that if he wanted the video footage, for Plaintiff to call him on Monday, March 12, 2012, and Defendant ALI would have the footage ready for Plaintiff.

38.   A woman who was filming at the scene with her cell phone, upon Plaintiff's encouraging her to film, told Plaintiff that she worked for BROOKLYN BOWL.

39.   One of Plaintiff's friends called the police to come to the scene.

40.   Shortly thereafter, when Plaintiff was with his girlfriend and his friends on the sidewalk trying to gather himself after having been slammed with great force into the pavement by RASHAUM MCDANIEL, Defendants Police Officer ROSATO and JOHN DOES (on information and belief, either one or two additional uniformed NYPD police officers other than Defendant ROSATO) arrived at the scene in a marked police car.

9

41.   On information and belief, Defendants Police Officer ROSATO and/or JOHN DOES first sought to speak with, and did speak with, employees of the BROOKLYN BOWL, on information and belief either Defendant ALI, RASHAUM MCDANIEL, or other MICHAEL MOES employees of the BROOKLYN BOWL.

42.   When the police officers approached the Plaintiff – despite the fact that it was plainly visible that Plaintiff had been the victim of a physical attack – Defendant Police Officer ROSATO would not listen to a word that Plaintiff said, and was very rude, dismissive, and aggressive towards plaintiff.

43.   After Plaintiff told Defendant Police Officer ROSATO how he had just been beaten up by RASHAUM MCDANIEL, Defendant ROSATO stated dismissively, in sum and substance, that it did not look as though Plaintiff had been beaten up, and Defendant Police Officer ROSATO demanded to see Plaintiff's identification.

44.   Plaintiff handed Defendant ROSATO his identification (a valid Colorado driver's license with Plaintiff's home address at his mother's home).

45.   Plaintiff, stunned at Defendant Police Officer ROSATO's callousness, indifference to his health and well-being, and aggressiveness, asked, in sum and substance, if Defendant ROSATO was going to beat him up as well.

46.   Defendant Police Officer ROSATO then said, in sum and substance, "now I will," and came at Plaintiff angrily and aggressively, and grabbed Plaintiff's arm.

10

47.   Plaintiff, terrified, managed to free his arm and run away from Defendant ROSATO.

48.   Plaintiff continued to run, and ran out of sight and hid from Defendant ROSATO, who was also trying to attack him.

49.   Defendant ROSATO still retained Plaintiff's identification.

50.   Plaintiff's girlfriend asked Defendant ROSATO to give her Plaintiff's identification.

51.   Defendant ROSATO refused, and told Plaintiff's girlfriend, in sum and substance, and in a plainly threatening manner, "tell him to come down to the precinct to get it and see what happens."

52.   Plaintiff's girlfriend continued to ask Defendant ROSATO to give her Plaintiff's identification.

53.   Defendant ROSATO arrested Plaintiff's girlfriend for allegedly slamming the door of the police car on his leg, which was a false allegation.

54.   Defendant's girlfriend was charged with a slew of serious charges, including two counts of Assault in the 2nd Degree (which is a D felony punishable by up to 7 years imprisonment).

55.   Plaintiff's girlfriend, frightened by the numerous serious charges pending against her, eventually agreed to plead guilty to a single count of violation of § 240.20 of the New York State Penal Law (disorderly conduct), which is a violation under New York State law, and is not considered to be a crime (in

distinction to a felony or misdemeanor), and received a conditional discharge.

56.   In all the time Plaintiff's girlfriend was in police custody, not once did Defendant ROSATO or any of the JOHN DOES ask her what had transpired between Plaintiff and the MICHAEL MOE # 1 BROOKLYN BOWL SECURITY GUARD, or ask her anything otherwise about Plaintiff, including where Plaintiff resided (Plaintiff's identification listed a Colorado address).

57.   None of Defendant ROSATO or any of the JOHN DOES gave Plaintiff's identification to Plaintiff's girlfriend to return to him.

58.   Unbeknownst to Plaintiff (or to Plaintiff's girlfriend), Defendant ROSATO issued a false summons to Plaintiff for disorderly conduct, claiming falsely in the narrative portion of the summons that:

> At TPO [time and place of occurrence] the undersigned A/O [arresting officer] Did observe the Deft [defendant] w/ intent to harrass and annoy the general public, Did yell and curse loudly in clear view of the general public.

59.   These allegations are lies.  Plaintiff at no time yelled or cursed prior to when Defendant Police Officer ROSATO grabbed his arm.

60.   When Defendant Police Officer ROSATO grabbed Plaintiff's arm, Plaintiff, terrified, yelled to alert the people around him to what was happening to him.

61.   Defendant ROSATO filed the summons with the Kings County

Criminal Court, and made it returnable on June 6, 2012, but never served, by mail or otherwise, a copy of the summons on Plaintiff.

62.   On information and belief, Defendant ROSATO asked Plaintiff for his identification, attempted to arrest Plaintiff, and issued the summons against Plaintiff to attempt to protect the BROOKLYN BOWL and its employees, and also in retaliation for the perceived disrespect he had received from Plaintiff, and because he was embarrassed that Plaintiff had gotten away from him.

63.   On information and belief, Defendant ROSATO purposely did not mail, or otherwise seek to serve, the summons on Plaintiff in order that a bench warrant would issue against Plaintiff, to attempt to protect the BROOKLYN BOWL and its employees, and also in retaliation for the perceived disrespect he had received from Plaintiff, and because he was embarrassed that Plaintiff had gotten away from him.

64.   Plaintiff found out for the first time that a summons had been issued against him when he received a letter in the mail at his Colorado address from the Kings County Criminal Court stating that on May 31, 2012 the Court had *sua sponte* dismissed the case against him.

65.   Defendant Police Officer ROSATO and the other JOHN DOES members of the NYPD who arrived at the scene at the BROOKLYN BOWL simply took the side of the BROOKLYN BOWL employees, and, on information and belief, did not conduct any inquiry or investigation other than speaking solely to the BROOKLYN BOWL

13

employees, whose narrative they accepted unquestioningly.

66. Defendant Police Officer ROSATO and the other JOHN DOES members of the NYPD who arrived at the scene at the BROOKLYN BOWL did not seek to speak to, and did not speak to, any of the numerous witnesses present about whether Plaintiff in fact had been viciously attacked without cause or justification by RASHAUM MCDANIEL.

67. On information and belief, the NYPD had a policy, practice, and/or custom that members of the NYPD simply defer to accounts of alleged misconduct by members of the public given by management and/or security guards at various clubs, other entertainment venues, and retail establishments in the CITY OF NEW YORK.

68. RASHAUM MCDANIEL beat and manhandled Plaintiff under color of law in that he and the other employees of the BROOKLYN BOWL were granted by members of the NYPD a status according to which they were granted undue deference in their disputes (including physical disputes) with the public.

69. Defendants RASHAUM MCDANIEL, MICHAEL MOES, and ANDREES ALI acted under color of law in that they willfully participated jointly with members of the NYPD, and members of the NYPD attempted to arrest Plaintiff (and declined to arrest RASHAUM MCDANIEL for his vicious attack on the Plaintiff) based on statements made by BROOKLYN BOWL employees, including defendants RASHAUM MCDANIEL, MICHAEL MOES, and ANDREES ALI, without

14

conducting any independent or honest investigation, and granting undue deference to the narrative(s) provided by the BROOKLYN BOWL employees.

70.  Defendant BROOKLYN BOWL, by and through its agents, servants and/or employees, including defendants RASHAUM MCDANIEL, MICHAEL MOES, and ANDREES ALI, willfully participated in joint activity with defendant CITY, its agents, servants and/or employees, in attempting to have Plaintiff detained, arrested, imprisoned, and charged without justification, privilege, or probable cause.

71.  Based on the instigation, importuning, and encouragement by defendant BROOKLYN BOWL, its agents, servants and/or employees, including defendants RASHAUM MCDANIEL, MICHAEL MOES, and ANDREES ALI, and without first conducting any reasonable or honest inquiry or investigation, defendants Police Officer ROSATO and JOHN DOES intentionally and with deliberate indifference to Plaintiff's civil rights attempted to arrest Plaintiff, and further unlawfully issued a false summons to Plaintiff, and further purposefully failed to serve said summons upon Plaintiff in hope that a bench warrant would issue against Plaintiff.

72.  Plaintiff at no time engaged in any prohibited or illegal conduct at the BROOKLYN BOWL, or in the vicinity of the BROOKLYN BOWL.

73.  As a result of the collective acts of defendant CITY, its agents, servants and/or employees, including Defendants Police

15

Officer ROSATO and JOHN DOES, and defendant BROOKLYN BOWL, its agents, servants and/or employees, including defendants RASHAUM MCDANIEL, MICHAEL MOES, and ANDREES ALI, plaintiff sustained physical injury and suffered emotional distress, and has otherwise been damaged.

74.   When Plaintiff called the BROOKLYN BOWL and asked for Defendant ALI on March 12, 2012 to obtain the video footage that Defendant ALI had promised would be ready for him, he found out that Defendant ALI was not working that day, and some male MICHAEL MOE employee who stated that he also was a manager, told Plaintiff that it would, in sum and substance, be a lengthy process to obtain the video footage.

75.   On March 13, 2012 the undersigned sent, via certified mail, a preservation letter to the BROOKLYN BOWL, Attn: ANDREES ALI, Manager (or other relevant Officer or Employee of BROOKLYN BOWL), demanding the preservation of all video recordings, still photographs, other electronic or audio recordings, or documents concerning any physical confrontation between BROOKLYN BOWL employees and any members of the public, or concerning any arrests made, in the vicinity of the BROOKLYN BOWL, from the night in question (from 9:00 p.m. on March 10, 2012 to 3:00 a.m. on March 11, 2012).

76.   No response was ever provided to the undersigned's March 13, 2012 letter.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

77.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

78.  By their conduct and actions in harassing, searching, seizing, arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating against for the exercise of rights to free speech and assembly of, violating rights to equal protection of, violating rights to due process of, discriminating against, inflicting emotional distress upon, failing to intercede on behalf of, and in fabricating an account surrounding the March 10-11, 2012, incident regarding plaintiff, the individual defendants, acting both on their own and in conspiracy with each other, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused damage and injury in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth and Fourteenth Amendments.

79.  As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury,

pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

<u>SECOND CLAIM</u>

**SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

80.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

81.  By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory individuals / officers RICHARD ROES, CHARLEY RYAN, PETE SHAPIRO, ANDREES ALI, and those MICHAEL MOES who exercised supervisory responsibilities, caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth and Fourteenth amendments.

82.  As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK AND BROOKLYN BOWL FOR CONSTITUTIONAL VIOLATIONS

83.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and

19

through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech in a manner that affronts police officers or is interpreted by police officers as challenging their authority. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

87. The misconduct detailed above was also the result of an institutional policy, practice, and/or custom of defendant CITY whereby NYPD officers responding to scenes such as that described above are discouraged from making further inquiry or investigation prior to arresting a subject other than receiving information from the personnel at clubs or other entertainment venues, or from retail establishments, which is given undue deference.

88. Defendant CITY authorized and tolerated as institutionalized practices, and ratified the misconduct detailed above, by failing to take adequate precautions in the supervision and/or training of police personnel, including specifically defendants Police Officer ROSATO and JOHN DOES.

89. The defendant CITY's policies/customs and defendant CITY's failure to supervise and/or train its employees, including defendants Police Officer ROSATO and JOHN DOES rose to the level of deliberate indifference to the consequences of its actions, and

indifference to plaintiff's rights, privileges and immunities secured by the Constitution of the United States of America, <u>inter alia</u>, plaintiff's First, Fourth and Fourteenth Amendment rights.

90.  At all times material to this complaint, defendant BROOKLYN BOWL, acting through its employees and agents, and through the individual defendants had <u>de facto</u> policies, practices, customs and usages, including acting in conspiracy and conjunction with employees and agents of the City of New York concerning the aforementioned unconstitutional policies, practices, customs, and usages, which were a direct and proximate cause of the unconstitutional conduct alleged herein.

91.  At all times material to this complaint, defendant BROOKLYN BOWL, acting through its employees and agents (including its managers and security personnel), and through the individual defendants, had <u>de facto</u> policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline its employees and agents, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said employees and agents.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.  As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### DEPRIVATION OF RIGHTS UNDER
### 42 U.S.C. §1981

93.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

94.  The Plaintiff was subjected to racially discriminatory conduct by Defendants BROOKLYN BOWL, CHARLEY RYAN, PETE SHAPIRO, ANDREES ALI, RASHAUM MCDANIEL, and MICHAEL MOES in violation of his rights as guaranteed under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF BROOKLYN BOWL,
### CHARLEY RYAN, AND PETE SHAPIRO
### FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION
### AND 42 U.S.C. §1983, AND UNDER 42 U.S.C. § 1981.

95.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

96.  The conduct of defendants ANDREES ALI, Manager of the

Brooklyn Bowl; RASHAUM MCDANIEL; and MICHAEL MOES alleged herein, occurred while they were on duty and/or in uniform, and/or in and during the course and scope of their duties and functions as managerial and / or security employees in the management and maintenance of BROOKLYN BOWL, and/or while they were acting under color of state law as agents of defendant BROOKLYN BOWL and/or while they were acting under color of state law through conspiracy with officers and/or officials of THE CITY OF NEW YORK and/or while they were engaging in racially discriminatory conduct toward Plaintiff in violation of 42 U.S.C. § 1981, and, as a result, defendant BROOKLYN BOWL and defendants RYAN and SHAPIRO, as the co-owners of defendant BROOKLYN BOWL, are liable to the plaintiff pursuant to the doctrine of respondeat superior for deprivation of rights under the United States Constitution and 42 U.S.C. § 1983, and under 42 U.S.C. § 1981.

97.  As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### SIXTH CLAIM

**RESPONDEAT SUPERIOR LIABILITY OF THE BROOKLYN BOWL**

**FOR STATE LAW VIOLATIONS**

98.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

99.  The conduct of defendants ANDREES ALI, Manager of the Brooklyn Bowl; RASHAUM MCDANIEL; and MICHAEL MOES alleged herein, occurred while they were on duty and/or in uniform, and/or in and during the course and scope of their duties and functions as managerial and/or security personnel in the management and maintenance of BROOKLYN BOWL, and, as a result, defendants BROOKLYN BOWL, CHARLEY RYAN, AND PETE SHAPIRO are liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

100. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

101. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

102. The Plaintiff has filed a petition in New York State Supreme Court, Kings County, seeking permission to file a late notice of claim against the City of New York pursuant to N.Y. General Municipal Law § 50(e)(5).  That application is pending.

103. The conduct of the Defendants police officer ROSATO, JOHN DOES, and RICHARD ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of the defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

104. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### ASSAULT AND BATTERY

105. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

106. By the actions described above, defendants did inflict assault and battery upon plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

107. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

### FALSE ARREST AND IMPRISONMENT

108. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

109. By the actions described above, defendants caused to be falsely arrested and imprisoned or falsely arrested and imprisoned plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the

plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

110. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

### MALICIOUS PROSECUTION

111. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

112. By the actions described above, defendant ROSATO maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendant ROSATO were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

113. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and

injured.

## ELEVENTH CLAIM

### INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

114. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

115. By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

116. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

### ABUSE OF PROCESS

117. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

118. By the conduct and actions described above, defendant ROSATO employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of defendant ROSATO were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

119. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

### TRESPASS

120. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121. By the actions described above, defendants willfully,

29

wrongfully and unlawfully trespassed upon the person of plaintiff.

122. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### FOURTEENTH CLAIM

#### VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

123. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

124. By the actions described above, defendants violated the free speech and assembly rights of plaintiff and retaliated against plaintiff for the exercise of his rights to free speech and assembly. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

125. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great

humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### NEGLIGENCE

126. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

127. The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

128. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

129. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

130. Defendants THE CITY OF NEW YORK, BROOKLYN BOWL, CHARLEY RYAN and PETE SHAPIRO negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

131. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTEENTH CLAIM

### CONSTITUTIONAL TORT

132. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

133. Defendants, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 8, 11 and 12 of the New York State Constitution.

134. A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 11 and 12 of the New York State

32

Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

135. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTEENTH CLAIM

### New York City Human Rights Law

136. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

137. By the actions described above, Defendants BROOKLYN BOWL, CHARLEY RYAN, PETE SHAPIRO, ANDREES ALI, RASHAUM MCDANIEL, and MICHAEL MOES violated plaintiff's rights as protected by the New York City Human Rights Law (NYC Admin. Code § 8-101 et seq.).  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his rights as guaranteed thereby.

138. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and

injured.

WHEREFORE, the plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

Dated:     New York, New York
           August 6, 2013

Jeffrey Rothman, Esq.
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980

Attorney for Plaintiff